AMERICAN GUILD OF MUSICAL ARTISTS, INC., and Others, Suing Individually and on Behalf of All Other Members of the American Guild of Musical Artists, Inc., Similarly Situated, Appellants, Respondents, v. JAMES C. PETRILLO, Individually, and as President of American Federation of Musicians, an Unincorporated Association, and AMERICAN FEDERATION OF MUSICIANS, Respondents, Appellants.

First Department, January 24, 1941.

*Frederick Evan Crane* and *Sidney Elliott Cohn* of counsel [*Louis B. Boudin, Henry Jaffe, Hyman N. Glickstein* and *Leonard B. Boudin* with them on the brief; *Henry Jaffe*, attorney for American Guild of Musical Artists, Inc., and others, and *Boudin, Cohn & Glickstein*, attorneys for Lawrence Tibbett and others], for the appellants, respondents.

*Samuel Seabury* of counsel [*Henry A. Friedman* and *George Trosk* with him on the brief; *Henry A. Friedman*, attorney], for the respondents, appellants.

GLENNON, J. The primary question to be determined between the parties to this litigation is whether or not this controversy is a labor dispute within the meaning of subdivision 10 of section 876-a of the Civil Practice Act. The plaintiffs, who are members of the American Guild of Musical Artists, Inc., sought, in brief, an injunction restraining the defendants, who are members of the American Federation of Musicians, from

(a) Interfering with the making, booking and performance of contracts and engagements of the American Guild of Musical Artists, Inc.;

(b) Preventing American Guild of Musical Artists from contracting with managers, contractors and others on its own behalf and on behalf of the plaintiffs and other artists in the musical profession;

(c) Coercing the plaintiffs and other artists into resigning from American Guild of Musical Artists and joining the American Federation of Musicians;

(d) Interfering with the engagements of the individual plaintiffs and other members of American Guild of Musical Artists for professional services;

(e) Interfering with the right of free association of the individual plaintiffs and other members of American Guild of Musical Artists and their right to join and remain in American Guild of Musical Artists;

(f) Ordering members of American Federation of Musicians to refrain from working with members of American Guild of Musical Artists solely because of the said artists' membership in American Guild of Musical Artists and non-membership in American Federation of Musicians;

(g) Intimidating persons into refusing to deal with American Guild of Musical Artists, the individual plaintiffs and all other members of American Guild of Musical Artists solely because of such membership.

The plaintiffs made a motion, returnable at Special Term, New York County, for an injunction *pendente lite*. The defendants made a cross-motion for judgment on the pleadings under rule 112 of the Rules of Civil Practice, on the ground that the complaint fails to state facts sufficient to constitute a cause of action for an injunction. The court at Special Term denied plaintiffs' application for a temporary injunction and also denied the motion made by defendants to dismiss the complaint.

At the outset it might be well to quote the definition of a " labor dispute " as it is set forth in subdivision 10 of section 876-a of the Civil Practice Act: " The term ' labor dispute ' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee."

Perhaps it would not be amiss to point to the fact that the wording of this section is practically the same as that which is to be found in section 113 of title 29 of the United States Code (47 U. S. Stat. at Large, 73).

A brief resume of the facts leading up to the organization of plaintiff union appears in the complaint. The plaintiff union was organized and received its charter on or about the 10th day of April, 1936. Its purpose was " to advance, foster, promote and benefit those connected with the art of music in the field of grand opera, concert, recital and oratorio, to wit, concert and opera singers, chorus singers and ballet dancers and choreographers in opera and concert; solo instrumental artists in the field of concert, recital and oratorio; conductors of concert and operatic performances; accom-

panists of concert opera artists; and the making of records by any of the above artists (all such persons being referred to herein as ' artists '); to secure and protect the rights of said artists in their professional activities; to take united action to prevent and abolish exploitation of said artists by agents, managers and others, and to eliminate unfair practices detrimental to artists engaged in the musical profession as aforesaid and affecting their welfare and to engage in related activities to promote their common aims and interests as artists and professionals, and to improve the condition of the musical arts and the dissemination of musical culture."

The plaintiff union, in 1937, became affiliated with the Associated Actors and Artists of America which was organized and received its charter from the American Federation of Labor in 1919. The latter had sole and exclusive jurisdiction of actors, artists and performers in all branches of the entertainment arts, exclusive of musicians playing in bands and orchestras. According to the allegations of the complaint, pursuant to the terms " of said affiliation and in accordance with the Constitution of the FOUR A's [Associated Actors and Artists of America] and its charter from the American Federation of Labor, the plaintiff American Guild of Musicial Artists was granted and it acquired sole and exclusive jurisdiction in the field of concert, recital, oratorio and grand opera, including specifically jurisdiction over all concert and solo operatic singers, instrumental soloists, dancers, chorus singers and other performers in the field of concert, recital, oratorio and grand opera."

The defendant union was organized and received its charter from the American Federation of Labor on November 6, 1896. It obtained from the American Federation of Labor exclusive jurisdiction over " performers on musical instruments of any kind who render musical services for pay."

A short time after the organization of the plaintiff union, difficulties ensued between it and the defendant association. Under date of August 5, 1940, James C. Petrillo, president of the American Federation of Musicians, wrote the following letter to Lawrence Tibbett, president of the plaintiff union:

" *August* 5, 1940

" Mr. LAWRENCE TIBBETT
President AGMA
545 Fifth Avenue
New York, N. Y.

" DEAR SIR AND BROTHER: At this time, the American Federation of Musicians desires to make a request that all instrumen-

talists belonging to your organization, such as Heifetz, Elman, Hoffman, Horowitz and all symphony orchestra conductors resign from your organization and become members of the American Federation of Musicians where they rightfully belong.

" As you know, the charter of the American Federation of Musicians granted by the American Federation of Labor calls for all instrumentalists to belong to the American Federation of Musicians.

" From the inception of the American Federation of Musicians, we have not interfered with such artists, and rightfully so, feeling that they were in a position to take care of themselves and were not in competition with members of the American Federation of Musicians.

" The request that we are making at this time has been brought about by the reason that these instrumentalists saw fit to join a labor union, and so long as they desire to belong to a labor union, then they rightfully belong to the American Federation of Musicians.

" This situation has brought on many complications and misunderstandings. For instance, AGMA has been taking in accompanists (pianists) who play for opera singers, symphony conductors, etc. AFRA has taken in entire orchestras which of course is in violation of its charter.

" This office is notifying all the radio interests, picture studios, symphony orchestra managements, grand opera companies, recording companies, booking agencies, etc., that these people will not be recognized by the American Federation of Musicians and members of the American Federation of Musicians will not be permitted to render any services at any functions in which they may participate unless they become members of the American Federation of Musicians on or before Labor Day, 1940.

" I hope that the relationship between your organization and the American Federation of Musicians will always continue to be on a pleasant basis."

At this point it might be well to call attention to the fact that under ordinary conditions and circumstances, where there is neither malice nor an attempt to inflict injury on others, it has been held that the members of a labor organization have the right to refuse to work with persons, employed in the same field of endeavor, who are not members of their union. ( *National Protective Assn.* v. *Cumming*, 170 N. Y. 315.) It should be borne in mind that both these organizations received their charters from the American Federation of Labor, and it would seem to us that it is, in the first instance, the proper tribunal to solve the difficulties of the parties to this controversy. ( *Lafond* v. *Deems*, 81 N. Y. 507.)

While we are mindful of the fact that we are dealing with pleadings, still they are sufficient, on their face, to show that a " labor dispute " actually exists within the meaning of subdivision 10 of section 876-a of the Civil Practice Act.

The situation here presented is similar to that which was out-. lined· in *Milk Wagon Drivers' Union* v. *Lake Valley Farm Products, Inc.* (311 U. S. 91), where the United States Supreme Court held that no injunction could issue because of the existence of a " labor dispute."

There is an additional reason, which might be termed the secondary one in this case, why this complaint must be dismissed. If we strip the complaint of the allegations which are clearly conclusions of law, we find no facts set forth to indicate that the plaintiff union is entitled to the relief which it seeks. It has not shown that the defendant maliciously or illegally interfered with the contracts of the members of plaintiff's union. What the defendant is seeking to do, undoubtedly, is to protect itself and to increase its membership. Defendant union is well within its rights in protecting its organization and in not permitting its members to play their instruments with non-members of their organization. A quotation from the case of *Williams* v. *Quill* (277 N. Y. 1) will suffice to sustain the point. There the Court of Appeals, in referring to the case of *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (245 N. Y. 260), said: " This case has become the law of this State and has been followed in other instances. Therefore, we approach this case in the light of the law as it was before section 704 of the Labor Law was adopted, and we find that a labor organization is permitted to combine and to strike in a particular industry for the purpose of obtaining employment for its own people, even to the extent of excluding others from the entire industry who are not union men." (See, also, *Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405, and *Bossert* v. *Dhuy,* 221 id. 342.)

We have reached the conclusion, therefore, that the complaint must be dismissed for two reasons: *First,* that the controversy between the parties involves a " labor dispute " within the meaning of subdivision 10 of section 876-a of the Civil Practice Act; and *second,* that it fails to state a cause of action viewed in the light of the law as it stood prior to the enactment of section 876-a.

The order, in so far as it denies plaintiffs' motion for an injunction *pendente lite,* should be affirmed; and, in so far as it denies defendants' motion for judgment on the pleadings dismissing the complaint, reversed, with twenty dollars costs and disbursements to the defendants, and the said motion granted.

TOWNLEY, DORE and CALLAHAN, JJ., concur; MARTIN, P. J., concurs in result.

Order, in so far as it denies plaintiffs' motion for an injunction *pendente lite*, unanimously affirmed; and, in so far as it denies defendants' motion for judgment on the pleadings dismissing the complaint, reversed, with twenty dollars costs and disbursements to the defendants, and the said motion granted.