**Kimberly ORICK, et al., Plaintiffs,**

v.

**Rory BANZIGER, et al., Defendants.**

No. C–1–95–246.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 8, 1996.

William Joe Steele, Cloppert Portman Sauter Latanick & Foley—2, Columbus, OH, for Kimberly Orick, April Pierce.

Gary David Ostendarp, Batavia, OH, Helen E. Mason, Prosecuting Attorney's Office, Batavia, OH, for Rory Banziger.

Gary David Ostendarp, Batavia, OH, Mary Lynne Birck, Assistant Prosecuting Attorney, Batavia, OH, Helen E. Mason, Prosecuting Attorney's Office, Batavia, OH, for Clermont County Bd. of Mental Retardation and Developmental Disabilities.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' motion for judgment on the pleadings (doc. 5), Plaintiffs' response (doc. 9), Defendants' reply (doc. 10) and Plaintiffs' motion to file response instanter (doc. 11).

## BACKGROUND

From January 4, 1993, until July 2, 1993, Plaintiffs, Kimberly Orick and April Pierce, were employed as "Habilitation Specialists" at Defendant Clermont County Board of Mental Retardation and Developmental Disabilities (the "Board"). Plaintiffs were probationary employees and members of the Clermont County Special Education Association/Ohio Education Association ("OEA"), which was the exclusive collective bargaining representative of the Habilitation Specialists employed by the Board.

Plaintiffs, along with other members of the OEA, participated in a strike against the Board in March of 1993. Plaintiffs allege that Board agents warned them that those probationary employees who participated in the strike would be placing their jobs at risk.

While Ms. Pierce was walking the picket line during the strike, a vehicle driven by a non-striking employee which was crossing the picket line nearly struck her. Ms. Pierce filed a criminal complaint against the driver. Plaintiffs allege that some time later, Defendant Rory Banziger ("Banziger"), the Superintendent of the Clermont County Board of MR/DD, demanded that she withdraw her complaint. Ms. Pierce refused.

On April 12, 1993, Ms. Orick submitted a letter to the Board requesting back pay. In her letter, Ms. Orick claimed she was owed back pay because of an error in the "calculation of her years of experience and placement on the salary schedule." She further indicated in her letter that if she did not receive a response within seven days, she would refer the matter to her OEA attorney. Mr. Banziger responded on April 29, 1993, and denied her request for back pay. Ms. Orick alleges that she was told by a friend that her name was placed on the list of employees to be terminated because of her request for back pay.

On July 2, 1993, the Board and Mr. Banziger terminated Plaintiffs' probationary employment. Plaintiffs filed this action, pursuant to 42 U.S.C. § 1983, alleging (1) that their termination was in retaliation of Plaintiffs' exercise of First Amendment rights, and (2) that by terminating their employment, Defendants deprived Plaintiffs of their liberty interest in public employment without due process in violation of the Fourteenth Amendment.

In their motion for judgment on the pleadings, Defendants argue (1) that Plaintiffs have failed to state a claim under 42 U.S.C. § 1983 because none of Defendants' actions constitute a constitutional deprivation, (2) Plaintiffs have failed to allege that the Board had a practice or policy of depriving employees of constitutional rights, pursuant to which Mr. Banziger acted, and (3) that Plaintiffs have failed to allege the essential elements of a deprivation of liberty interest under the Fourteenth Amendment.

## STANDARD OF REVIEW

This matter is before the Court on a Rule 12(c) motion for judgment on the pleadings. A Rule 12(c) motion is judged under the same standard of review as a 12(b)(6) motion. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987).

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. Fed.R.Civ.P. 12(b)(6). The basic federal pleading requirement is contained in Federal Rule of Civil Procedure 8(a), which states that a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill,* 827 F.2d 1102, 1103 (6th Cir.1987):

In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The admonishment to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit recently clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## DISCUSSION

In order to state a claim under § 1983, the plaintiff must allege (1) the deprivation of a constitutional or federal right and (2) that the deprivation was caused by a person acting under the color of state law. *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991); *Bird v. Summit County, Ohio,* 730 F.2d 442, 444 (6th Cir.1984) (the violation must be predicated on a deprivation of a constitutional right). Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### I. First Amendment Claim

In order for a public employee to state a retaliatory discharge claim for the exercise of First Amendment rights under § 1983, (1) plaintiff must show that the speech or activity is protected, (2) plaintiff must then show that the speech or activity was a substantial or motivating factor in her discharge, and (3) if plaintiff meets these burdens, then defendant can defeat the claim by demonstrating that it would have taken the same action absent the protected speech or activity. *See Dambrot v. Central Michigan University,* 55 F.3d 1177, 1186 (6th Cir. 1995); *Swineford v. Snyder Cty Pennsylvania,* 15 F.3d 1258, 1270 (3d Cir.1994) (citations omitted).

The Supreme Court has held that a public employee, "retains her First Amendment right to comment on matters of public concern without fear of reprisal from the government as employer. *Dambrot,* 55 F.3d at 1185 (6th Cir.1995) (citing *Connick v.*

*Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983)). The threshold question in order to determine whether the speech is constitutionally protected is whether the speech may be fairly characterized as a matter of public concern. *Matulin v. Village of Lodi,* 862 F.2d 609, 612 (6th Cir.1988). If the plaintiff's speech is not a matter of public concern, then it is unnecessary for courts to scrutinize the reasons for the plaintiff's discharge. *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689, 1690.

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–148, 103 S.Ct. at 1690. Where the speech, if aired to the public, "would convey no information at all other than the fact that a single employee is upset with the status quo," the speech is not of public import. *Id.* at 148, 103 S.Ct. at 1691. In other words, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. at 1690.

■ It is a question of law, not fact, whether the speech is protected. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1691 n. 7. The Supreme Court has found the following statements to be matters of public concern: after an assassination attempt on the President, employee's statement "if they go for him again, I hope they get him;" an employee's question put to co-workers regarding whether they ever felt pressured to work in political campaigns; state college professor's legislative testimony advocating that a college's status be elevated to a four-year status; a memorandum regarding teacher dress code given by a teacher to a radio station. *See Swineford,* 15 F.3d at 1271 (citations omitted).

■ If the speech is a matter of public concern, then the court must apply the following balancing test: "[i]f the employee's free speech interests outweigh the efficiency interests of the government as employer, the employee's First Amendment rights have been violated." *Dambrot,* 55 F.3d at 1186 (6th Cir.1995) (citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–1735, 20 L.Ed.2d 811 (1968)).

### A. Ms. Orick's Statement

■ The complaint alleges that Ms. Orick submitted a letter to the Board requesting back pay, which was allegedly owed to her as a result of a calculation error, and stating that if she did not receive a response, she would refer the matter to her union attorney. The complaint further alleges that Defendants terminated her in retaliation for their exercise of First Amendment rights. Defendants argue that the complaint alleges that her request for the owed back pay caused the retaliatory discharge.

We find that Ms. Orick's request for back pay is not a matter of public concern. The request reflects her dissatisfaction with her employer which is relevant to her personal interests only. *See Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. If her request were aired to the public, the only information the public could glean from her statement is that she is unhappy with her current employment situation. *See id.* at 148, 103 S.Ct. at 1690–1691.

■ However, Plaintiffs appear to argue their complaint should be construed so as to allege that it was Ms. Orick's threat of union representation which was the cause of her retaliatory discharge. Even under this construction, we find that her statement threatening union legal assistance is not a matter of public concern.

■ Even though the speech "involves a topic traditionally considered of public import—such as union organizing—[it] does not automatically guarantee that the speech is constitutionally protected." *Perkins v. O'Malley,* No. 94C7029, 1996 WL 316894, at *4 (N.D.Ill. June 10, 1996); *see also Boals v. Gray,* 775 F.2d 686, 693 (6th Cir.1985) (holding that public employee's speech, activity or association, merely because it is union-related, does not inherently

touch on a matter of public concern); *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir.1995). Therefore, "if the speech concerns a matter of public interest but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." *Perkins*, 1996 WL 316894, at *5 (noting the distinction between "'an employee complaining about matters private to himself, such as whether he was being paid enough or given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest.'") (citations omitted).

The Sixth Circuit has held that an employee's request for a union legal representative, which resulted in the employer adding two more days on to his initial suspension, is not speech or association touching on a matter of public concern because it was a challenge to the employer's authority and involved a matter of internal discipline which was of concern to the employee alone. *Boals*, 775 F.2d at 696; *see also Scripp, III v. St. Louis Community College*, No. 88–2517C(2), 1991 WL 352888, at *6 (E.D.Mo. July 30, 1991) (where plaintiff claimed his discharge was due to his selection of a union member as his grievance representative, the court found that origin of the dispute and grievance was the letter of reprimand which was not a matter of public concern), *aff'd*, 972 F.2d 354 (8th Cir.1992); *cf. Gregorich*, 54 F.3d at 416 (holding that employee's union-organizing activities to effectuate a change in the leave policy for the benefit of all similarly-situated employees in a particular district were a matter of public concern because the point of his expression was to obtain union representation for all the employees in the district).

Similarly, here, Ms. Orick's statement of intent regarding union assistance to resolve her back pay request relates to a term of her employment which is of concern to her alone. Her need for union assistance was only relevant to the resolution her personal dispute. Thus, her statement addressed the effect of union assistance on her alone rather than addressing the general need for or right to union assistance.

Finally, Plaintiffs argue that Ms. Orick's statement constitutes a form of a petition protected under the First Amendment right to petition. Plaintiffs argue at the time she made the statement, Defendants and the union had not agreed upon a collective bargaining agreement and thus there were no formal means of addressing grievances. To support this argument, Plaintiffs cite *San Filippo v. Bongiovanni*, 30 F.3d 424, 442–443 (3d Cir.1994), which held that the "public concern" test of *Connick* does not apply to First Amendment right-to-petition claims. The Third Circuit specifically recognized that its holding contravenes seven other circuit courts which have considered the issue. *San Filippo*, 30 F.3d at 440 (citations omitted). Those other circuits, including the Sixth Circuit, hold that "a public employee who alleges that he or she was disciplined in retaliation for having filed a lawsuit against his or her employer does not state a claim under § 1983 unless the lawsuit addressed a matter of public concern. *Id.* (citing *Rice v. Ohio Dept. of Transp.*, 887 F.2d 716, 720–721 (6th Cir. 1989), *vacated on other grounds*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990)). In *Rice*, the Sixth Circuit, using the public concern test, held that an employee's reverse discrimination charge filed against his government employer was not protected by the First Amendment. *Rice*, 887 F.2d at 720–721; *see also Ghosh v. Ohio Univ.*, Nos. 87–3899, 87–4115, 1988 WL 118053, at * 5 (6th Cir. Nov. 8, 1988) (rejecting district court's holding that employee's grievances "warranted first amendment protection because they were akin to filing a lawsuit" and dismissing the first amendment claim because the grievances were not a matter of public concern); *Zurc v. Lucas Cty, Ohio*, No. 84–3168, 1985 WL 13066, at *4–5 (6th Cir. Mar. 29, 1985) (rejecting plaintiff's attempts to distinguish *Connick* by arguing she was "petitioning the government for redress of grievances" because the "plaintiff was acting on her own personal behalf, and was addressing the government as her employer and not as a governing body.").

We find the Sixth Circuit law controlling and decline to follow *San Filippo*. Analyzing Ms. Orick's statement as a petition, accord-

ing to the law of the Sixth Circuit, requires it to be a matter of public concern. Having found above that Ms. Orick's statement does not touch upon a matter of public concern, we hold that Plaintiffs have failed to state a First Amendment claim with respect to the alleged retaliation for Ms. Orick's statement.

## B. Union Association

Although not readily apparent in the complaint, Plaintiffs allege that Defendants terminated their employment in retaliation for their union membership. *See* Pltf's Memo. Opp. at 15. Plaintiffs acknowledge that there is no constitutional right to strike. *See Dorchy v. Kansas,* 272 U.S. 306, 311, 47 S.Ct. 86, 87, 71 L.Ed. 248 (1926); *Ledesma v. Block,* 825 F.2d 1046, 1050 (6th Cir.1987); *United Steelworkers of America, AFL–CIO v. University of Alabama in Birmingham,* 430 F.Supp. 996, 1001 (N.D.Ala.1977), *aff'd* 599 F.2d 56 (5th Cir.1979). Rather, Plaintiffs argue that "the asserted fact that Defendants threatened the discharge of probationary employees that chose to join the strike further supports Plaintiffs' claims that they were discharged for their active association with the union." Pltf's Memo.Opp. at 15. The union-related facts in the Complaint, other than Plaintiffs' participation in a strike, are that Ms. Orick stated her intent to seek union legal assistance regarding her request for back pay and that Ms. Pierce's criminal charge arose from an incident that occurred during the union strike.

■ The Sixth Circuit held in *Boals* that *Connick's* "public concern" test applies to both association and speech. *Boals,* 775 F.2d at 692. Union association is protected "if it addresses a matter of public concern and the employer has no overriding state interest in efficient public service that would be undermined by the speech or association." *Milliron v. Louisville & Jefferson Metro. Sewer,* 867 F.Supp. 559, 563 (W.D.Ky.1994) (citing *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–2897, 97 L.Ed.2d 315 (1987), *Connick,* 461 U.S. at 143, 103 S.Ct. at 1688, and *Boals,* 775 F.2d at 692).

■ Here, Plaintiffs have not alleged any union-related association which constitutes a matter of public concern. *Cf. Milli-*

*ron,* 867 F.Supp. at 563 (where plaintiff's association as union president, which included filing class actions against employer, extended beyond internal relations and "addresse[d] the public issue of the rights of employees to organize and thus bargain from a position of strength with management."); *Griffin v. Thomas,* 929 F.2d 1210, 1215 (7th Cir.1991) (holding that plaintiff did not state a freedom of association claim because grievance filed through union was a matter of personal concern relating to plaintiff's performance rating). Plaintiffs' participation in the strike is not constitutionally protected because there is no fundamental constitutional right to strike. We have already decided that Ms. Orick's statement regarding her back pay is not a matter of public concern. Finally, we find that Ms. Pierce's refusal to withdraw criminal charge only tangentially relates to her union-activity; the charge stemmed from an incident which happened to take place where the strike occurred. However, the underlying basis for the criminal charge—that of nearly being hit by a car—does not depend on the fact that it happened at a union related incident. Moreover, the criminal complaint was filed against another employee, not her employer. Therefore, the filing of a criminal charge cannot be an activity on which to base a retaliation claim because of union association.

Thus, Plaintiffs have not alleged any facts relating to their union association which are matters of public concern in order to state a claim for a violation of their right of association under the First Amendment.

■ Even if we were to find Plaintiffs' statements and union activity concerned a public matter, the complaint nonetheless fails to allege that her statement was the "substantial" or "motivating" factor for her discharge. *See Dambrot,* 55 F.3d at 1186; *Mt. Healthy City Sch. Dist. Board of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *cf. Monks v. Marlinga,* 923 F.2d 423, 425 (6th Cir.1991) (where complaint alleged that employees were discharged "in substantial part" because of they were "active in union activities", dismissal under Rule 12(b)(6) was inappropriate).

### C. Ms. Pierce's Refusal to Withdraw Criminal Complaint

Plaintiffs assert that Defendants' demand to withdraw the criminal charge filed against a co-employee for nearly striking Ms. Pierce with a vehicle violated Ms. Pierce's First Amendment rights to petition or right of access to courts.

The right of access to courts is a constitutional right, the interference or deprivation of which is actionable under § 1983. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 958 (6th Cir.1986). The purpose of this right is for the plaintiff to have the opportunity to redress her grievances in court. However, with a criminal complaint, it is the State, via the prosecutor, and not the person who filed the criminal charge, who is the litigant bringing the grievance. Therefore, because Ms. Pierce is not the proper party in interest bringing the criminal charges against the co-employee, her refusal to withdraw the complaint cannot state a claim for interference with her right of access to courts. Accordingly, Plaintiffs have failed to state a claim for a First Amendment violation with respect to the request to withdraw the criminal charge.

### II. Fourteenth Amendment

Plaintiffs also argue that Defendant's termination violated their right of substantive due process under the Fourteenth Amendment. Specifically, Plaintiffs claim they have "clearly asserted a substantive due process 'deprivation of a particular constitutional guarantee' ... e.g., deprivation of their fundamental rights to association with the union, access to the courts and freedom of speech." Pltf's. Memo.Opp. at 17.

In order to state a claim for denial of substantive due process, the claims "must be based on either a violation of an explicit constitutional guarantee ... or on behavior by a state actor that shocks the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir.1990); *see also Thomas v. Gee*, 850 F.Supp. 665, 670 (S.D.Ohio 1994) ("The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty'".) (citing *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

Plaintiffs argue that the fundamental rights implicated by Defendants' actions are the rights of access to courts, freedom of speech, and right to association. All of which are constitutionally guaranteed. *See NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170–1171, 2 L.Ed.2d 1488 (1958) (First and Fourteenth Amendments protect the fundamental right of association); *Thomas v. Collins*, 323 U.S. 516, 532, 65 S.Ct. 315, 323–324, 89 L.Ed. 430 (1945) (First Amendment right of association extends to union membership and activities); *Graham*, 804 F.2d at 958 (right of access to courts is a fundamental right).

Plaintiffs, however, have failed to identify a fundamental right which is not already the basis of their First Amendment claims. Thus, for the same reasons that Plaintiffs have not alleged facts to support a First Amendment claim, their substantive due process claim must fail as well.

### CONCLUSION

Plaintiffs have failed to establish a violation of their First Amendment rights or substantive due process rights. Accordingly, we GRANT Defendants' motion to dismiss on these grounds, and thus we do not need to address Defendants other arguments at this time.

Plaintiff also filed a motion to file a response instanter, which we GRANT. We GRANT Plaintiffs 30 days' leave to file an amended complaint so as to allege additional facts, if any, which would support a claim.

SO ORDERED.