George A. Arkwright, J.
The plaintiff, Empire Ralph. Corp., seeks, in this action, a permanent injunction against the defendant union, Moving Picture Machine Operators Union, Local 306, AFL-CIO, and its president, treasurer and business agent, prevening them from picketing the said theatre located at Ralph Avenue, in the Borough of Brooklyn, City and State of New York. The plaintiff is engaged in the business of operating the theatre for the exhibition of moving pictures, television and similar matters. The theatre had been closed for several years. About early March, 1956, the plaintiff corporation entered into a lease for the use of said theatre and in connection with its contemplated operation cleaned, repaired and refurbished the building. At that time there was no moving picture equipment in the building. The plaintiff purchased the same, delivery beginning on April 10, 1956 and running through April 14, 1956. While installing this equipment, the plaintiff employed on a temporary basis two so-called relief operators who were regularly licensed moving picture operators and who *602 were members of the Independent Motion Picture Operators and Television Employees, Inc., Union, Subsequent to this and by agreement dated April 16,1956, the plaintiff entered into a contract with said Independent Union, by the terms of which it agreed to recognize the said union as the sole and exclusive bargaining agent of its employees as projectionists in the said theatre and agreed to employ projectionists for the period of the contract which is to terminate April 15, 1958, the said employees to be members in good standing of the said union. The plaintiff employer agreed to pay the said projectionists furnished by the union the sum of $165 a week for the period of the contract, the said salary based on a 77-hour work week and to be apportioned among the said projectionists, The plaintiff’s investment in the theatre, in actual expenditures and committals, amounted to some $18,000,
On April 27, 1956 the theatre was opened for business.
Shortly before that date, representatives of the defendant union made known to the officers of the plaintiff that they would insist upon motion picture projectionists of their union being employed as the projectionists of the theatre and, upon learning of the signing of the contract wdth the Independent Union by the plaintiff, commenced picketing the theatre.
It appears that the picketing consists of two pickets who walk to and fro in front of the theatre near the curb, carrying sandwich signs, and that four to five additional men as relief to these pickets stand or are at various times in the vicinity, usually across the street, but at such times do not engage in the picketing.. No more than two pickets are used at any one time. There is no disturbance, no interfering with the ingress or egress or passing to and fro of others, either by word or action, and the picketing at all times has been peaceful. Several signs have been used, but the one currently in use and for some 10 days past, reading in Spanish, requests that persons do not attend the theatre, stating that the owner of the theatre pays the employees less than the other theatres in New York City do and that the theatre does not have a retirement plan nor any of the other benefits that are given to the members of the defendant union, which is stated to be the only union that there is for motion picture operators who are members of the American Federation, Union Local 306.
The picketing has been in effect from April 27 and is still going on. The defense interposed is twofold. The first defense is that a majority of the projectionists in New York City earn their livelihood at a trade governed by collective bargaining agreements; that the defendant union, by diligent and skillful *603 collective bargaining, has been able to achieve superior working conditions for its projectionists as to wages, hours, pension, welfare and other benefits; and that the Independent Union has not maintained such high standards of wage policies and benefits, has entered into an agreement with the plaintiff for wages and conditions below said standards and is thereby injuring the projectionists belonging to the defendant union by seeking to lower said standards of livelihood and benefits. The second defense is that the plaintiff has failed to comply with the terms and provisions of section 876-a of the Civil Practice Act relative to necessary statutory proof required by the court without which an injunction may not be granted.
Said section 876-a provides that the court shall not have jurisdiction to issue a temporary or a permanent injunction in any case involving or growing out of a labor dispute as therein defined, except after findings of all of the facts specified in the section to be filed in the record of the case.
A case is held to involve or grow out of a labor dispute, when used in section 876-a and for the purpose thereof, and from among the alternatives set forth therein, when it involves persons engaged in the same industry, trade, craft or occupation, when the case involves conflicting or competing interests in a “ labor dispute ” (as defined in the section) “ of ‘ persons participating or interested ’ therein ” (as defined in the section). (Civ. Prac. Act, § 876-a, subd. 10, par. [a].) As so defined, the term “ labor dispute ” includes any controversy concerning terms or conditions of employment or the representation of persons in negotiating, fixing, maintaining, claiming or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of ‘ ‘ employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.” (Civ. Prac. Act, § 876-a, subd. 10, par. [c].) The section further holds that a person or association participates or is interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employees engaged in such industry, trade, craft or occupation.
The evidence establishes a labor dispute within the above-mentioned section.
The plaintiff in its proof, has failed to comply with the requisite provisions of the section.
The evidence and the fair inferences therefrom also show that motion picture houses are classified in categories, according to *604 the recognized practices of trade unions, based upon booths, seating capacity, first run of pictures and other considerations, including foreign language showings, and that union wages are based upon such considerations. The scale of wages in the contract, under plaintiff’s claim, is based upon 700 seats, which plaintiff claims are seats actually in use. There is moreover room for doubt in this as the actual seats in the balcony and orchestra amount to 1,098, and the theatre license of the City of New York specifies the theatre is licensed for 1,632 seats. The defendant union has shown that it is a well-organized union, conducting union operations in the five city boroughs, that it has numerous contracts with motion picture houses in the city, that the scale of wages of its employees in this line of business under similar or nearly similar conditions is higher than those paid by the plaintiff under its contract, that it has pension, hospitalization and other benefits reflected in its waige scales, and that it seeks and has a higher standard wage scale than does the Independent which has no pension or other union benefits for its members. The plaintiff offered no sufficient proof in contradiction of these assertions. The wording of the sign is within reasonable limits.
The injunction is denied. Judgment is granted in favor of the defendants dismissing the complaint. (Nash v. Mennan, 279 App. Div. 609; Brayer v. Charton, 37 N. Y. S. 2d 326; Stalban v. Friedman, 259 App. Div. 520; Buy-Wise Markets v. Winokur, 167 Misc. 235; Vim Electric Co. v. Solomon, 67 N. Y. S. 2d 908.)